## FLYNN v. MIAMI BRIDGE CO., et al.

Industrial Commission.

September 27, 1957.

Kelner & Lewis, Miami, for claimant.

Lawrence G. Lally, Coral Gables, for the employer and insurance carrier.

JOHN V. CHRISTIE, Deputy Commissioner.

Hearings were held on August 29 and October 30, 1956 before deputy commissioner Halpert, thereafter the case was assigned to this commissioner for final determination and an order. Counsel stipulated that the undersigned should determine the issues on the basis of the transcript of testimony, without further hearings.

Involved are claims for permanent partial disability benefits and for reimbursement of medical transportation. The carrier controverted, claiming the statute of limitations had run.

Claimant, while working as a motorcycle policeman for the Miami Bridge Co. on the Venetian causeway, was injured during and within the scope of his employment on April 16, 1948. He was chasing a speeding car when a second car turned to the left directly in front of him, causing him to strike the second car in the rear and resulting in a fracture of the right femur.

Claimant's average weekly wage at the time of the accident was $50. Temporary total compensation benefits at $22 per week were paid to him during the period from April 21, 1948 to June 1, 1950.

The carrier furnished medical treatment from the date of the accident to and including May 21, 1956, when Dr. Herbert Virgin, Jr. rendered his final medical report. The date of maximum recovery is found to be May 21, 1956.

The evidence presented in this case shows that the claimant received a fracture of the right femur which was unusual in nature in that treatment and surgical intervention was necessary over a period of years from 1948 until 1956, involving a series of operations, leg casts, and numerous x-rays and physical therapy.

There was but one treating physician, Dr. Virgin, who testified that due to the nature of the disability he was unable to finally evaluate the permanent disability until May 21, 1956—although he submitted interim reports to the carrier to the effect that there would be permanent disability.

Claimant testified that he had never been given a rating prior to 1956, and that when he requested one Dr. Virgin told him he could not be given a disability rating until he was well.

The medical reports admitted in evidence reflect that the carrier had notice within the statutory period that a permanent disability would eventuate—but made no effort to inform claimant of his rights before the running of the statute of limitations.

While it is true that there is no provision in the Act requiring a carrier to notify a claimant of such rights, the Act was set up pri-

marily to protect the rights of the working man, was never intended to deprive a claimant of his benefits in the type of factual situation we have in this case, where the claimant attempted to obtain a permanent disability rating but was informed by the attending physician that such a rating could not be given and was not given until more than two years after the last payment for temporary compensation.

It is well to note that the attending physician was authorized by the insurance carrier and as such was acting in direct liaison with the carrier. Naturally the claimant respected the opinions and decisions of the doctor. Relying on the doctor, claimant did not file a formal claim for permanent disability within the statutory time limit.

I find nevertheless that this case falls within the principle enunciated in Trotter v. Virgil Sanders Farm and Steinfeldt-Thompson Co., decision #2-515. As it is found in that case, I find that the claimant in the instant case was lulled into a sense of false security through the action or inaction of the carrier and its authorized treating physician, that the carrier was fully aware that the claimant would be permanently disabled, and that therefore the defense of the statute of limitations should be barred to them.

Those who do not speak when justice requires that they should, should not be heard when they seek to profit by their self serving silence. The carrier is estopped from asserting the defense of the statute of limitations.

The doctrine of estoppel is a part of the common law of Florida, and should be applied when the facts in a litigated case justify it. Steen v. Scott (Fla.), 198 So. 489. The doctrine of estoppel is applicable where one, by word, act or conduct wilfully causes another to believe in the existence of certain things and thereby induces another to act on such belief or to alter his own previous condition to his injury. State, ex rel. Watson v. Gray (Fla.), 48 So. 2d 84.

Dr. Virgin's testimony was to the effect that claimant now has a permanent partial disability of the right leg of 30%. No testimony was offered in contradiction, I therefore accept the percentage as the true and correct percentage of permanent disability.

I also accept as true and correct Dr. Virgin's testimony and final report reflecting a total of 89 trips made by claimant over a period of years for treatment, x-ray, or examination. Claimant testified that as a result of his physical condition it was necessary for him to use taxis to and from the doctor's office "85% of the time," and

that a round trip cost approximately $2.10. The rest of the time his wife or a friend took him to the office. The carrier did not rebut this testimony—and I find that the expenses as outlined by the claimant are reasonable.

It is ordered that—(1) Claimant achieved maximum recovery on May 21, 1956, that he has a 30 % permanent partial disability of the right leg, and that the carrier, U. S. Fidelity Guaranty Co., shall pay him permanent partial disability benefits for a period of 60 weeks at the compensation rate of $22 per week, plus interest at the rate of 6 % per annum from the date when said compensation payments should have been made. (2) That the defense of the statute of limitations is barred on the ground of the doctrine of estoppel, as stated in the preceding findings of fact. (3) That the carrier shall reimburse the claimant for transportation expenses in the amount of $157.50, which is computed on the basis of 85 % of the total number of trips, namely 89, or 75 round trips at the rate of $2.10 per round trip. (4) That the carrier shall pay Kelner & Lewis $500 as a reasonable attorney's fee for representing the claimant. (5) That the carrier shall pay the costs of this proceeding.